IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT, IN
AND FOR LEON COUNTY, FLORIDA

**PHILLIP M. WISE,**

    **Plaintiff,**  CASE NO. 2020-CA-
      FLA BAR NO. 0539211

v.

**STATE OF FLORIDA, DEPARTMENT
OF HEALTH,**

    **Defendant.**
_____/

## COMPLAINT

Plaintiff, PHILLIP M. WISE, hereby sues Defendant, STATE OF FLORIDA, DEPARTMENT OF HEALTH, and alleges:

### NATURE OF THE ACTION

1. This is an action brought under Chapter 760, Florida Statutes, 42 U.S.C. §2000e et seq. and 42 U.S.C. §1981a.

2. This is an action involving claims which are, individually, in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of costs and interest.

### THE PARTIES

3. At all times pertinent hereto, Plaintiff, PHILLIP M. WISE, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class because of his gender (male), and due to the fact that Plaintiff reported unlawful employment practices and was the victim of retaliation thereafter.

4. At all times pertinent hereto, Defendant, STATE OF FLORIDA, DEPARTMENT OF HEALTH, has been organized and existing under the laws of the State of Florida. At all times

pertinent to this action, Defendants have been an "employer" as that term is used under the applicable laws identified above.

5. Plaintiff has satisfied all conditions precedent to bringing this action in that Plaintiff dual-filed three charges of discrimination - on or about May 10, 2018, on or about October 4, 2018, and on or about November 7, 2018 - with the Florida Commission on Human Relations and Equal Employment Opportunity Commission, has waited at least 180 days, as requested Right to Sue letters, and is eligible to receive them. This action is timely filed thereafter.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff was employed as a Registered Nurse with Defendant. His employment began in January 2014, in Daytona Beach, Florida. His starting job title was Nurse Care Coordinator (NCC), in the Brain and Spinal Cord Injury Program (BSCIP). He holds a Master of Arts degree in counseling from Fayetteville State University. He also held a Certified Case Manager (CCM) credential, a Certified Brain Injury Specialist (CBIS) credential, a Registered Respiratory Therapy credential and license and, for a period of time, the Certified Passenger Safety Seat Technician (CPST) credential.

7. During the course of his employment, he was subjected to repeated gender discrimination, harassment and retaliation for opposing unlawful employment practices. The discrimination harassment took place at the hands of, among other people, Linda Peterson, the Director of Nursing in Daytona Beach; Sherry Buchman, Regional Nursing Director in Jacksonville; Linda Bonitatis, the Regional Program Administrator in Jacksonville. Plaintiff complained to multiple Human Resource officials, including Amy Graham, Chief Bureau of Personnel and Human Resource Management and Deedee McGee, Equal Opportunity Manager,

as well as George Mamak, an investigator with Defendant's Office of Inspector General, all to no avail.

8. While employed as a pediatric NCC, Plaintiff would get a referral, meaning information that a child had been brain or spinal-cord injured, and would attempt to contact the parents responsible for the child's care. He would then make appointments to visit the family and child in the hospital or at home. He covered seven counties, all the way from the East Coast of Daytona Beach to the West Coast in citrus County. Plaintiff would meet the child and family in their home, and would do an assessment as to how the child could walk, talk, and how they were otherwise functioning and appeared. Then he would attempt to find out what needs the child had.

9. For example, he would determine whether the child needed physical rehabilitation, occupational rehabilitation, speech rehabilitation, and whether the child needed special accommodation in school. In some cases, the school accommodations would be reflected or captured in an Individualized Education Plan (IEP or a 504 plan). Plaintiff's goal was to call on them at least every 45 days. The age range of his client base was between birth and age 18. When the child turned 18, they would be transferred to the adult brain and spinal cord injury program located in Orlando. Plaintiff also had a budget to provide for assistive devices such as ramps or hand controls. Plaintiff would also, on a personal level and reflective of his professional demeanor, provide inspiration to the children he visited. Plaintiff was uniquely able to relate to the needs of his clients because his own wife is wheelchair-bound.

10. His first supervisor was Ann Wilson, Nursing Supervisor. Ms. Wilson oversaw approximately seven nurses at the clinic where Plaintiff worked. They included, among others, Leighray Wilson (HIV nurse), Dawn Star (educational consultant), Jennifer O'Connell (behavioral

social worker), Kerri Harrelson (Medicaid social worker), Laverne Bell (social worker for HIV), Ruth Brewster (clinical nurse), Sally Lucas (diabetic nurse), and Patricia Lloyd (LPN, clinic nurse).

11. After two years on the job, Plaintiff learned that the agency was going to do away with the BSCIP program, and so he assumed a caseload in Medicaid, as a nurse care coordinator, and then as a supervisor. Nonetheless, he continued to carry a caseload of brain and spinal cord injury clients. And he scored 100% on both his work in the BSCIP program and at his clinic. The change occurred because the authorities within DOH appeared to have decided that they were going to restructure the program, and higher case managers who did not have RN credentials. At all times, Plaintiff was volunteering to perform additional duties beyond his original assignments, and to take additional cases beyond original expectations.

12. Plaintiff was promoted to Nursing supervisor - RN supervisor - in December 2016, replacing his original supervisor, Ann Wilson. At this point, plaintiff's new supervisor was Judy Ryan. The position came with a significant pay increase but not on par with comparable female supervisors within the region nor state who did not simultaneously supervise both clinic and care coordination. Plaintiff simultaneously held the position of Case Management supervisor, physical clinic supervisor, behavioral clinic supervisor and later Medical Foster Care Supervisor. Plaintiff remained in this job until he was forced out by the department on or about January 4, 2019. In a staff meeting with nothing but females apart from Plaintiff, Lisa Bonitatis drew a chart for everyone to see showing the organization without Plaintiff's position. She was announcing the departure of Plaintiff in no uncertain terms, and without any prior warning to him. It was a stunning display of cruelty and insensitivity. Plaintiff had worked hard in his job to excel for those who

4

depended on him - his disabled infants, toddlers, older children and teens.   Plaintiff is a disabled veteran and needs health insurance. He had injuries from service to his country, and he needed healthcare. His wife is a quadriplegic who needs a new electric wheelchair every five years.

13.	Plaintiff returned to his office after the meeting and burst into tears. Even one of his coworkers approached him and said words to the effect of "Well, that was a pretty shitty thing for them to do."

14.	At the point where he learned in a group meeting that his position was being eliminated, there had been three Nursing Director positions open, now all filled by females. The Care Manager positions went to a vendor. Plaintiff searched, and there were no jobs available. They were all gone. Plaintiff continued to look for work and positions within the agency but was unable to do so. And he was told his position would be eliminated and gone by January 2019. Plaintiff found another job eventually outside the agency, but the health insurance costs with the new company were extraordinarily higher than he paid with Defendant.

15.	Upon information and belief, Plaintiff was the victim of gender discrimination and retaliation. He was the victim of gender discrimination because he was provided no advance warning of the elimination of his position, and available positions for which he was qualified had been filled by females. The component of Defendant within which Plaintiff work, Children's Medical Services, is heavily dominated by females, and its senior management is exclusively or nearly exclusively female.

16.	Further, and prior to the elimination of Plaintiff's position, he had made multiple complaints of discrimination and harassment within the agency. His complaints included complaints of favoritism toward females employed by the agency or who were seeking

employment by the agency. His first complaint was in October 2016. The substance of his complaint at that time included complaints of discrimination. On or about November 8, 2017, Plaintiff emailed EEO employee Aldrin Sanders with a complaint of discrimination.

17.  Unfortunately, Mr. Sanders, like other DOH employees purporting to investigate and address Plaintiff's claims of discrimination, treated Plaintiff like a nuisance, and made a number of comments that suggested Mr. Sanders was simply mocking Plaintiff. On or about December 11, 2017, Linda Peterson came to his office and told Plaintiff that he was no longer the Medical Foster Care Supervisor, and was forbidden from using that title.

18.  Plaintiff's complaints continued into 2019. On June 17, 2019, he received a call out of the blue from an Inspector General employee named Jacob Alexander. Alexander asked Plaintiff to discuss jokes that Plaintiff had complained about. The jokes included jokes of a sexual nature, which placed Plaintiff in an awkward position. If he laughed or reacted to the jokes, he might be seen as a sexist male in a sea of female employees. Yet if he did not laugh, he would be ostracized from those telling the jokes and laughing at them. Plaintiff explained the situation to Mr. Alexander, and also told Mr. Alexander about a female nurse that had threatened him. During the conversation, Mr. Alexander, clearly showing no interest in assisting Plaintiff, said that he could make a decision and wrap up their investigation or Plaintiff could simply forget the whole thing.

19.  Prior to his forced departure from the agency, Plaintiff had multiple conversations with the Inspector General's office, and with the human resources department. He was also interviewed by Inspector Specialist of the Equal Employment Opportunity Section Michelle Consalvi.

20.  While employed, plaintiff also filed multiple Charges of Discrimination with the

EEOC. He filed one on May 10, 2018. He filed an amended version complaint of discrimination and discrimination in hiring and promotions on November 7, 2018. Among the positions for which he was passed over in favor of less qualified females was a nursing director position in Daytona, a nursing director position in Orlando, and a nursing consultant position. That was a telework position. Plaintiff also lost out on a Safety Net position. In fact, Plaintiff evaluated the hiring decisions of this unit and in sum, it appeared there had not been a male in the positions for as far back as 15 years. There was a position for a nursing director in Jacksonville that Plaintiff, based on prior discriminatory decision-making, saw as a futile opportunity and did not apply. Sometimes the hiring requirements which would disqualify male applicants would be altered at the last minute, and a female candidate to be chosen.

21.     At points, it appeared interviewers were taken into account the fact that plaintiff had engaged in protected activity by making complaints of discrimination.

Apart from the events and incidents described above, Plaintiff was treated discriminatory and differential manner, as compared to females, and as compared to people who did not exercise protected rights to complaint of discrimination, in multiple ways. He was also subjected to a hostile work environment, with frequent behaviors that included isolating and ignoring him and showing open disrespect for him.

<u>COUNT I</u>

**GENDER DISCRIMINATION
ADVERSE ACTION & HOSTILE WORK ENVIRONMENT**

22.     Paragraphs 1-21 are realleged and incorporated herein by reference.

23.     This is an action against Defendant for discrimination based upon gender brought

under Chapter 760, Florida Statutes and 42 U.S.C. §2000e et seq.

24. Plaintiff has been the victim of discrimination on the basis of Plaintiff's gender in that Plaintiff was treated differently than similarly situated employees of Defendant who are female and has been subject to hostility and poor treatment on the basis, at least in part, of Plaintiffs gender.

25. Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same. Defendant's known allowance and ratification of these actions and inactions actions created, perpetuated and facilitated an abusive, hostile and offensive work environment within the meaning of the statutes referenced above.

26. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a gender-based nature and in violation of the laws set forth herein.

27. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to Plaintiffs actual or constructive termination.

28. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon gender in violation of Chapter 760, Florida Statutes, and 42 U.S.C. §2000e et seq.

8

29. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, potential retirement benefits, and other benefits.

## COUNT II

## RETALIATION

30. Paragraphs 1-21 are hereby realleged and reincorporated as if set forth in full herein.

32. Defendant is an employer as that term is used under the applicable statutes referenced above.

33. The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting him under 42 U.S.C § 2000e *et seq.*, and Chapter 760, Florida Statutes.

34. The foregoing unlawful actions by Defendant were purposeful.

35. Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and was the victim of retaliation thereafter, as related in part above.

36. Plaintiff is a member of a protected class because he reported unlawful employment practices and was the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

37.     As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages.

38.     As a direct and proximate cause of Plaintiffs protected activity, he has been damaged, which damages include but are not limited to lost wages and other tangible job benefits plus attorneys' fees and costs, and every other kind of damage allowed by law. He has also suffered emotional pain and suffering damages and other intangible damages that continue to day. Plaintiff is also entitled to injunctive relief.

WHEREFORE, Plaintiff demands judgment against Defendants for the following:

(a) An injunction restraining continuing violations of the laws;

(b) Reinstatement to the same position that Plaintiff held before the retaliatory personnel actions or to an equivalent position, and/or instatement (placement) into one or more of the jobs Plaintiff was wrongfully denied;

(c) Reinstatement of full fringe benefits and seniority rights, to the extent such were available to him;

(d) Compensation for lost wages, benefits, and other remuneration;

(e) Damages as allowed by law;

(f) Attorney's fees, costs and cost of this action, and

(g) Any other relief deemed just and proper under the circumstances.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 16th day of September, 2020.

          Respectfully submitted,

          /s/Jim Garrity
          JIM GARRITY; GBN 121837
          MARIE A. MATTOX, P.A.
          310 East Bradford Road
          Tallahassee, FL 32303
          Telephone: (850) 383-4800
          Facsimile:   (850) 383-4801
          ATTORNEYS FOR PLAINTIFF